## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JONATHAN VERNON, et al.,

      Plaintiffs,

v.                                            CV No. 20-1270 CG/GBW

OIL PATCH GROUP, INC., et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiffs' *Motion to Remand to District Court of Lea County, New Mexico by Reason of Lack of Jurisdiction* (the "Motion"), (Doc. 20), filed December 14, 2020; Defendants' *Response in Opposition to Plaintiffs' Motion to Remand*, (the "Response"), (Doc. 30), filed December 28, 2020; and Plaintiffs' *Reply to Defendants' Response to Plaintiffs' Motion to Remand* (the "Reply"), (Doc. 34), filed January 7, 2021. In accordance with Federal Rule of Civil Procedure 73(b), all parties have consented to the undersigned to conduct dispositive proceedings and issue a final judgment in this matter. *See* (Doc. 22); 28 U.S.C. § 636(c). Further, the parties did not request a hearing on this Motion. *See generally* (Doc. 20); (Doc. 30); (Doc. 34). Having reviewed the parties' filings and the relevant law, the Court finds the Motion is well-taken and shall be **GRANTED**.

### I.    Factual and Procedural Background

This case arises from Defendant Oil Patch Group ("OPG")'s alleged failure to pay overtime wages to Plaintiffs Jonathan Vernon and Jonathan Eldridge ("Plaintiffs"). OPG, a provider of services in the oil and gas industry, employed Plaintiff Vernon as a

flowback supervisor in its Products Division from October 31, 2018, to March 13, 2020, and Plaintiff Eldridge as a flowback well technician and then a flowback supervisor in its Products Division from May 29, 2019, to March 27, 2020. (Doc. 1-2 at 2, 4-5); (Doc. 1-1 at 3-7). During that time, both Plaintiffs were Texas residents and maintained offices in Texas. (Doc. 1-2 at 4); (Doc. 1-1 at 3). In their job capacities, Plaintiffs supervised crews providing on-site services to OPG's clients, some of whom were in New Mexico, requiring travel to New Mexico. (Doc. 1-2 at 5-7); (Doc. 1-1 at 3).

Plaintiffs allege they performed a substantial amount of their work in New Mexico, for which OPG failed to adequately compensate them. (Doc. 1-1 at 3-7). In particular, Plaintiffs assert OPG failed to compensate Plaintiff Vernon for overtime work he performed from November 3, 2018, through February 21, 2020, and Plaintiff Eldridge for overtime work he performed each week from June 8, 2019, through March 13, 2020. *Id.* at 5-7. Accordingly, this action ensued.

On October 23, 2020, Plaintiffs filed a *Complaint for Overtime Compensation* (the "Complaint"), (Doc. 1-1 at 3-7), in the Fifth Judicial District Court in Lea County, New Mexico. In the Complaint, Plaintiffs claim OPG violated the New Mexico Minimum Wage Act (the "NMMWA"), NMSA 1978, § 50-4-26 (2018), entitling Plaintiff Vernon to treble damages totaling $221,103, and Plaintiff Eldridge to treble damages totaling $645,097.50. *Id.* at 3-4.

On December 7, 2020, Defendants OPG and Matt Eggleston ("Defendants") filed a *Notice of Removal* (the "Notice of Removal"), (Doc. 1), on the basis of federal question jurisdiction, removing this action from the Fifth Judicial District Court in Lea County to the United States District Court for the District of New Mexico. Specifically,

Defendants allege Plaintiffs seek relief under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, because Plaintiffs performed a substantial amount of their work for OPG in Texas, and "Texas does not have its own state wage-and-hour law." *Id.* at 3.

On December 14, 2020, Plaintiffs filed the instant *Motion to Remand*, contending the Complaint alleged Plaintiffs performed their work for OPG in New Mexico and it raised claims only under the NMMWA, thus presenting no federal question. (Doc. 20 at 1). Defendants responded, arguing Plaintiffs performed a substantial amount of their work in Texas, not New Mexico. (Doc. 30 at 3). Defendants maintain, as such, only FLSA can apply to the overtime work performed in Texas, giving this Court federal question jurisdiction over the case. *Id.* In reply, Plaintiffs acknowledge they performed work in both New Mexico and Texas, but assert the Complaint alleges, and seeks compensation, only for the overtime work performed in New Mexico. (Doc. 34 at 1).

## II.   Plaintiffs' Complaint and Exhibits

In the Complaint, Plaintiffs allege they are Texas residents "performing work in New Mexico." (Doc. 1-1 at 3). Plaintiffs allege they were employed by OPG "on [a] forty (40) hour work schedule" and were "required to work [a] substantial number of hours each week over forty (40) hours without payment of overtime compensation under provision of Section 50-4-26, NMSA (1978 Comp.)." *Id.* at 3-4. Plaintiffs claim an entitlement to recover unpaid overtime wages under "Section 50-4-26(C), NMSA (1978 Comp.)." *Id.* at 4.

Attached to the Complaint were two exhibits, itemizing the alleged overtime work performed by Plaintiffs in New Mexico . *See* (Doc. 1-1 at 5-7). Exhibit A, which concerns

Plaintiff Vernon, alleges a 71-week period of employment from October 31, 2018, through March 13, 2020, during which Plaintiff Vernon performed overtime work 48 separate weeks. *Id.* at 5-6. Exhibit A omits the following 23 weeks during that period, in which he allegedly did not perform overtime work in New Mexico:

| Weeks Excluded – Plaintiff Vernon | | | |
|---|---|---|---|
| 1 | December 1, 2018—December 7, 2018 | 13 | October 5, 2019—October 11, 2019 |
| 2 | December 29, 2018—January 4, 2019 | 14 | October 26, 2019—November 1, 2019 |
| 3 | January 5, 2019—January 11, 2019 | 15 | December 21, 2019—December 27, 2019 |
| 4 | February 23, 2019—March 1, 2019 | 16 | January 4, 2020—January 10, 2020 |
| 5 | March 2, 2019—March 8, 2019 | 17 | January 18, 2020—January 24, 2020 |
| 6 | March 9, 2019—March 15, 2019 | 18 | January 25, 2020—January 31, 2020 |
| 7 | March 16, 2019—March 22, 2019 | 19 | February 1, 2020—February 7, 2020 |
| 8 | March 30, 2019—April 5, 2019 | 20 | February 8, 2020—February 14, 2020 |
| 9 | May 18, 2019—May 24, 2019 | 21 | February 22, 2020—February 28, 2020 |
| 10 | June 22, 2019—June 28, 2019 | 22 | February 29, 2020—March 6, 2020 |
| 11 | July 27, 2019—August 2, 2019 | 23 | March 7, 2020—March 13, 2020 |
| 12 | August 24, 2019—August 30, 2019 | | |

*See id.* at 5-6.

Exhibit B, which concerns Plaintiff Eldridge, lists a 43-week period of employment from May 29, 2019, through March 27, 2020, during which Plaintiff Eldridge worked overtime 36 weeks. *Id.* at 7. Exhibit B omits the following seven weeks during that period, in which he allegedly did not perform overtime work in New Mexico:

| Weeks Excluded – Plaintiff Eldridge | | | |
|---|---|---|---|
| 1 | June 15, 2019—June 21, 2019 | 5 | December 14, 2019—December 20, 2019 |

| 2 | August 3, 2019—August 9, 2019 | 6 | March 14, 2020—March 20, 2020 |
| 3 | October 5, 2019—October 11, 2019 | 7 | March 21, 2020—March 27, 2020 |
| 4 | December 7, 2019—December 13, 2019 | | |

*See id.* at 7.

### III.   Legal Standard

An action initially filed in state court may be removed to federal district court if the

district court has original jurisdiction. *See* 28 U.S.C. 1441(a). Federal courts have

original jurisdiction over claims arising under the U.S. Constitution or federal law,

pursuant to 28 U.S.C. § 1331. *See* U.S. Const. At. III, § 2; *Exxon Mobil Corp. v.*

*Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

Federal question jurisdiction "demands not only a contested federal issue, but a

substantial one, indicating a serious federal interest in claiming the advantages thought

to be inherent in a federal forum. *Grable & Sons Metal Products, Inc. v. Darue Eng'g &*

*Mfg.*, 545 U.S. 308, 313 (2008). Federal issues embedded in state-law claims should

not be kept out "simply because they appeared in state raiment," but neither should they

be treated "as a password opening federal courts to any state action embracing a point

of federal law." *Id.* at 314. "Instead, the question is, does a state-law claim necessarily

raise a stated federal issue, actually disputed and substantial, which a federal forum

may entertain without disturbing any congressionally approved balance of federal and

state judicial responsibilities." *Id.*

The presence or absence of federal question jurisdiction "is governed by the

'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a

federal question is presented on the face of the plaintiff's properly pleaded complaint."

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). In other words, the plaintiff is "the master of the claim," and thus "may avoid federal jurisdiction by exclusive reliance on state law." *Id.* On the other hand, though, a plaintiff may not avoid federal jurisdiction by mere "artful pleading." *Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1061 (10th Cir. 2006). The artful-pleading doctrine is a narrow exception to the well-pleaded-complaint rule, and it prevents a plaintiff from defeating removal by failing to plead necessary federal questions. *See Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998).

Removal statutes are strictly construed, *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), and "[a]ll doubts are to be resolved against removal," *Fajen v. Found. Reserve Ins.*, 683 F.2d 331, 333 (10th Cir. 1982) (citation omitted). The defendant seeking removal bears the burden of establishing federal court jurisdiction "by a preponderance of the evidence." *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008). "If at any time before final judgement it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

### IV.  Analysis

In their Motion, Plaintiffs argue the Court lacks subject-matter jurisdiction over this action because the Complaint presents no federal question. (Doc. 20 at 1). Plaintiffs contend, specifically, that the Complaint alleges overtime for work performed only in New Mexico, and seeks compensation under NMMWA, not FLSA. *Id.*

In its Response, Defendants argue the factual allegations and the remedy sought in Plaintiffs' Complaint and attached exhibits present a federal question. (Doc. 30 at 8). Defendants contend the Complaint includes overtime work Plaintiffs performed in Texas, and, as such, it necessarily raises a claim under FLSA because Texas has no

applicable state wage-and-hour law. *Id.* at 5-6, 10, 15; *see also* (Doc. 1 at 5-6).

Defendants urge the Court, given Plaintiffs' alleged attempt to disguise their federal

claim with artful pleading, to consider, in addition to the Complaint and attached

exhibits, Defendants' Notice of Removal and attached affidavits, (Doc. 1), to find the

presence of a federal question. (Doc. 30 at 9-10, 11-13). Finally, Defendants argue that

remand may lead Plaintiffs to litigate these claims piecemeal, resulting in potentially

inconsistent results and wasted judicial resources. *Id.* at 14.

Plaintiffs acknowledge in their Reply that they performed overtime work for OPG

in both Texas and New Mexico, but they maintain the Complaint does not cover any of

the overtime work performed in Texas. (Doc. 34 at 2, 6-8). As proof, the Reply contains

an exhibit "show[ing] that there are many weeks [excluded from the Complaint] for

which Plaintiffs are not seeking recovery." *Id.* at 7. Plaintiffs explain this "is because

during those weeks . . . their work was in Texas." *Id.* Plaintiffs contend they excluded

any Texas claims in order "to pursue a state law cause of action, not a federal one," and

for this reason the Court should remand the action to state court. *Id.* at 10.

### A.   Papers Considered on a Motion to Remand

Before addressing the merits of Plaintiffs' Motion, the Court will first address what

papers it may consider in deciding the Motion. Defendants argue the Court may

consider not only the Complaint and its attached exhibits but also Defendants' Notice of

Removal and the declarations attached to it in determining whether a federal question is

presented. (Doc. 30 at 9-10, 11-13). Plaintiffs contend the Court may only consider the

Complaint and its attached exhibits, arguing that to permit otherwise would allow

Defendants to create federal jurisdiction. (Doc. 34 at 9).

Generally, "original jurisdiction is lacking unless . . . diversity of citizenship or a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Topeka Hous. Auth. v. Johnson*, 404 F.3d 1245, 1247 (10th Cir. 2005) (internal quotations and citation omitted). "The propriety of removal is judged on the complaint as it stands at the time of the removal." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488 (10th Cir. 1991) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)). Numerous courts have therefore found it "not appropriate to consider [the parties'] post-removal [filings] as to subject-matter jurisdiction. *Hamilton v. America Online, Inc.*, 1:06-cv-359 LH/LAM, 2006 WL 8443210, at *2 (collecting cases). This rule prevents the parties from unfairly manipulating the proceedings merely because their federal case begins to look unfavorable. *Id.* at 2.

It is unclear, however, whether courts in this District may consider removal filings other than the complaint and any attached documents, including the notice of removal itself and any attachments to it. In diversity jurisdiction cases, the Tenth Circuit has held courts can consider papers other than the complaint and its attachments. In *Laughlin v. Kmart Corp.*, the seminal case cited in this District, the Court held that the amount in controversy "is generally determined by the allegations of the complaint, or if they are not dispositive, by the allegations in the notice of removal." 50 F.3d at 873. Courts in this District have interpreted the rule to mean a federal court must attempt to ascertain the amount in controversy "by considering (1) plaintiff's cause of action as alleged in the complaint, (2) the notice of removal defendant filed with the federal court, and (3) other relevant materials in the record." *Varela v. Wal-Mart Stores, East, Inc.*, 86 F.Supp.2d 1109, 1111 (D.N.M. 2000) (Baldock, J., sitting by designation).

On the other hand, it appears courts in this District generally have not explicitly extended this rule to federal question jurisdiction cases. In *Arguello v. Oakwood Mobile Homes, Inc.*, for instance, a case involving federal question jurisdiction, the Court discussed the federal removal statute, 28 U.S.C. 1446(a), explaining that it "requires a removing defendant to file a notice of removal, 'together with a copy of all process, pleadings, and orders served upon such defendant.'" 1:97-cv-1602 LH/DJS, 1998 WL 36030430, at *1 (D.N.M. Aug. 25, 1998). The Court interpreted this language in the removal statute as "contemplat[ing] that this Court will evaluate . . . only those pleadings that have been served upon the removing defendant." *Id.* In *Hanna v. Miller*, the Court embraced this position, explicitly couching the rule in the context of diversity jurisdiction cases. 163 F.Supp.2d 1302, 1305 (D.N.M. 2001) ("*For purposes of diversity jurisdiction,* the amount in controversy is ordinarily determined by the allegations in the complaint, or, where they are not dispositive, by the allegations in the notice of removal.") (emphasis added) (internal quotation and citation omitted).

Plaintiffs and Defendants rely on various cases, respectively, to support their positions, but, though instructive, those cases do not resolve the matter. Defendants cite *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1473 (9th Cir. 1984), and *Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 769 n.3 (9th Cir. 1986). (Doc. 30 at 12-13). In these cases, both federal question cases, the courts did indeed review the notices of removal and attached documents to determine whether federal questions had been presented. *See Olguin*, 740 F.2d at 1473; *Bright*, 780 F.2d at 769, n.3. However, both are Ninth Circuit cases, thus shedding no light on this Circuit's view, and *Olguin* is specific to situations involving federal preemption. *See id.*

Plaintiffs offer a case in which this very Court discussed the matter, *Salazar v. City of Albuquerque Planning & Zoning Dep't Bldg. & Safety Div.*, 1:09-cv-00263 CG/RLP, 2009 WL 10708210, at *2 (D.N.M. May 21, 2009). (Doc. 34 at 9). There, though, this Court did not foreclose considering papers submitted *at the time of removal*, including the notice of removal and its attachments, as Defendants urge the Court to do here. Rather, this Court stated that in determining whether a federal question is present the Court cannot consider papers submitted *in response to a motion to remand. See id.* at *2-3.

In any event, the Court finds it unnecessary to decide the matter. The result, as discussed below, would be the same whether the Court considered only the Complaint and the attached exhibits or also the Notice of Removal and its attached affidavits. Given that, the Court will consider all the relevant documents that were filed with Defendants' Notice of Removal, including Plaintiffs' Complaint, (Doc. 1-1 at 3-4), Exhibits A and B attached to the Complaint, (Doc. 1-1 at 5-7), Defendant's Notice of Removal, (Doc. 1 at 1-19), and the Declarations of William Davis, (Doc. 1-2), and Defendant Matthew Eggleston, (Doc. 1-3) attached to the Notice of Removal. The Court will not, however, consider the Affidavits of Plaintiff Vernon, (Doc. 34-1 at 2-3), and Plaintiff Eldridge, (Doc. 34-2 at 2-3), because Plaintiffs submitted them only after, and in support of, their *Motion to Remand. See Salazar*, 2009 WL 10708210, at *2.

### B.  Whether the Papers Present a Federal Question

Turning next to the merits of the Motion, Plaintiffs contend the case should be remanded because the Court lacks subject-matter jurisdiction. (Doc. 20 at 1). Plaintiffs argue the Complaint raises claims only under the NMMWA, because it alleges only overtime work they performed for OPG in New Mexico. *Id.* The Motion is only one page,

but Plaintiffs expand upon this argument in their Reply to Defendants' Response, alleging the Complaint excludes any allegations regarding work performed in Texas. (Doc. 34 at 2, 6-8). As proof, Plaintiffs highlight Exhibits A and B, which allegedly "show[] that there are many weeks [excluded from the Complaint] for which Plaintiffs are not seeking recovery." *Id.* at 7. Plaintiffs contend this "is because during those weeks . . . their work was in Texas." *Id.* Plaintiffs explain they can maintain claims for unpaid wages under either New Mexico law or federal law, and as such they purposely excluded any Texas claims in order "to pursue a state law cause of action, not a federal one." *Id.* at 10. For these reasons, Plaintiffs request that the Court remand this action to state court. *Id.*

Defendants oppose remand, arguing the Court has subject-matter jurisdiction because the Complaint raises claims under FLSA. *See generally* (Doc. 30). Specifically, Defendants contend the Complaint seeks relief for overtime work substantially performed in Texas—claims which Defendants state are not cognizable under Texas state law—and thus those claims necessarily implicate FLSA. *Id.* at 3. Defendants deduce this from the Complaint because "Plaintiffs clearly claim they worked overtime 'each week' of their employment, [] clearly seek recovery for 'all overtime wages,'" and "the vast majority of the work they conducted for OPG was in Texas." *Id.* at 6, 15. Additionally, Defendants argue that remand would allow Plaintiffs to potentially file a separate suit in the future seeking relief for the overtime work performed in Texas, and risk inconsistent results. *Id.* at 13-14.

### 1. *The Complaint and Exhibits*

First, the Court can find nothing on the face of the Complaint or in the attached exhibits that presents a federal question. The Complaint alleges Defendants failed to

compensate Plaintiffs for overtime work performed only in New Mexico, and it cites only

the NMMWA. (Doc. 1-1 at 3-4). Despite Defendants' contention otherwise, the

Complaint is not unclear. *See* (Doc. 1 at 15) (citing *Cisneros v. DAKM, Inc.*, 7:13-cv-

556, 2014 WL 258755, at *3) (S.D. Tex. Jan. 23, 2014)). It specifically alleges that the

overtime work listed in Exhibits A and B was performed only in New Mexico, that

Plaintiffs seek relief in this suit only for that work, and that such claims are raised only

under NMMWA. (Doc. 1-1). The Complaint neither mentions overtime work performed in

Texas nor cites Texas state law or FLSA.[1] *See* (Doc. 1-1 at 3-4).

The Court further disagrees with Defendants that other language in the

Complaint reveals a federal question. *See* (Doc. 30 at 10). The Complaint does indeed

allege, as Defendants state, that Plaintiffs were "required to work substantial numbers of

hours *each* week over forty (40) hours without required payment of overtime," and

requests "[j]udgment against Defendants for *all* overtime wages." (Doc. 1-1 at 3-4)

(emphasis added). However, the Court does not read these allegations to be veiled

admissions, as Defendants suggest, that the Complaint seeks relief for *all* overtime

work performed throughout the entirety of Plaintiffs' employment with OPG. Rather, the

Complaint appears to limit "each week" and "all overtime wages" to the confines of the

"proceeding herein." *See id.* Thus, though inartful, "each week" and "all overtime wages"

appears to refer to only those weeks and hours listed in Exhibits A and B attached to

the Complaint.

---

[1] The Court takes no position on whether Texas state law covers overtime work
performed in Texas, or instead whether such claims necessarily implicate FLSA.
Rather, for the purposes of the instant Motion only, and upon the parties' apparent
agreement, the Court presumes that such claims would implicate FLSA.

To put a finer point on it, Exhibit A alleges Plaintiff Vernon performed overtime work in New Mexico 48 weeks during a 71-week period, and it lists each week. (Doc. 1-1 at 5-6); *see also supra* 4. Twenty-three weeks during this 71-week period are omitted, and thus Plaintiffs do not seek relief in this suit for those weeks. Likewise, Exhibit B alleges Plaintiff Eldridge performed overtime work in New Mexico 36 weeks during a 43-week period, and it lists those weeks. (Doc. 1-1 at 7); *see also supra* 4-5. Seven weeks during this period are omitted from Exhibit B. And for many of those weeks that are listed in Exhibits A and B, Plaintiffs allege only a minimal amount of overtime (fewer than ten hours over the 40-hour work week for approximately twelve of the listed weeks), despite "routinely work[ing] 80-120 hours per week." (Doc. 34 at 8); *see also* (Doc. 1-1 at 5-7). This suggests, as Plaintiffs rightly argue, that the Complaint does not seek relief for *all* overtime worked for the entirety of Plaintiffs' employment with OPG, and, more specifically, omits any overtime worked in Texas. As such, Defendants have failed to establish that the Complaint and its attachments, on their face, present a federal question.

## 2.   *The Notice of Removal and Declarations*

The Court will now turn to Defendants' Notice of Removal and supporting declarations. The question here is whether these papers reveal federal claims that Plaintiffs have otherwise attempted to disguise as NMMWA claims—whether the overtime work alleged in the Complaint *more likely than not* includes a substantial amount of work performed in Texas, and thus implicates FLSA. *See McPhail*, 529 F.3d at 953 (requiring defendant seeking removal to establish federal court jurisdiction by a preponderance of the evidence).

The Notice of Removal alleges that "most of [Plaintiffs'] work occurred in Texas," and, accordingly, the overtime work alleged in the Complaint must necessarily include work performed in Texas. (Doc. 1 at 3,12). In support, Defendants offer the Declarations of William Davis, (Doc. 1-2), OPG's Director of Production during Plaintiffs' employment, and Matthew D. Eggleston, (Doc. 1-3), OPG's Leadman Supervisor in the Accommodation Division, which is located in Hobbs, New Mexico.

In his Declaration, Mr. Davis alleges Plaintiffs, who both worked in the Production Division, were never assigned to any office in New Mexico. *Id.* at 1-5. Defendant Eggleston alleges largely the same in his Declaration—that employees in the Production Division are not assigned to OPG's Hobbs location, and Plaintiffs specifically never worked out of the Hobbs location. (Doc. 1-3 at 2-3). Mr. Davis further alleges the vast majority of Plaintiffs' corporate credit card and fuel card transactions occurred in Texas, showing they performed the vast majority of their projects in Texas. (Doc. 1-2 at 1-5).

While these facts certainly illuminate the larger picture of Plaintiffs' employment with OPG, they shed little light on any purportedly underlying federal claim in the Complaint. First, Plaintiffs appear to not dispute that they were assigned to offices in Texas, not New Mexico. *See generally* (Doc. 1-1); (Doc. 34 at 9). They contend, however, that they were often required to travel to New Mexico to perform their work, which is consistent with Defendants' description of the "travel to client sites located in New Mexico" required of Production Division employees. (Doc. 34 at 9); (Doc.1-2 at 3).

Second, while the allegation regarding fuel purchases and corporate credit card transactions during Plaintiffs' employment shows Plaintiffs made the majority of these

purchases in Texas, that does not inevitably lead to the conclusion that Plaintiffs therefore performed the majority of their work in Texas. Put differently, this allegation does not establish, for instance, that Plaintiffs' purchases in Texas were necessarily either preceded or subsequently followed by work performed only in Texas. The Court cannot rule out, based on this allegation or any of the papers before it, that Plaintiffs did not travel to or from New Mexico on the same day they made purchases in Texas, or, conversely, that Plaintiffs necessarily performed work in Texas on the same day they made purchases in Texas. In short, Defendants have offered insufficient, inadequate evidence of any federal question hidden in the Complaint.

As such, the Complaint does not establish that FLSA, or any other federal law, creates Plaintiffs' causes of action or that their right to relief necessarily depends on resolution of a substantial question of federal law. *Cf. Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1332 (10th Cir. 2006); *see also Grable*, 545 U.S. at 314. Based on the evidence, the Complaint seeks relief under only the NMMWA for alleged overtime work performed in New Mexico. Defendants have therefore failed to establish federal-question jurisdiction by a preponderance of the evidence.

### 3. Whether Plaintiffs' Texas Overtime Claims Must be Raised in the Complaint

Finally, the Court will address Defendants' request that the Court "[r]equire[e] Plaintiffs [] to transparently join their FLSA claims" to "prevent them from litigating this case piecemeal." (Doc. 30 at 14). Defendants argue that remand would allow Plaintiffs to potentially file suit in the future seeking relief for the overtime work performed in Texas, risking inconsistent results and wasting judicial resources. *Id.* at 13-14.

As explained above, it is axiomatic that Plaintiffs are the masters of their Complaint. *Caterpillar*, 482 U.S. at 392. Plaintiffs here "have chosen not to pursue recovery under the FLSA." (Doc. 34 at 10). That much is clear from not only the face of the Complaint and its attachments but also Defendants' Notice of Removal and its attachments. Moreover, since Plaintiffs have chosen to not pursue any FLSA claims— *i.e.*, overtime work performed in Texas—there is no federal issue intertwined with the current allegations in the Complaint.

Defendants cite *Middleton v. PNC Bank, N.A.* for the proposition that Plaintiffs must nevertheless join their FLSA claim to this action, and by extension also allege facts regarding their work in Texas. (Doc. 30 at 14) (citing *Middleton*, No. 3:17-cv-751 CHB, 2018 WL 5981850, at *5 (W.D. Ky. Nov. 14, 2018), *aff'd*, 785 F. App'x 341 (6th Cir. 2019)). Notwithstanding *Middleton*'s tenuous applicability to matters in this District, *Middleton* concerned a motion to dismiss, not a motion to remand. *Middleton*, 2018 WL 5981850, at *1, 4-5. That difference in procedural posture is crucial here.

The issue in *Middleton* was whether the Court should dismiss the complaint, based on res judicata, for the plaintiff's failure to previously raise certain necessary claims. *Id.* at 4-7. That issue required the Court to look back at actions the plaintiff failed to take in litigating certain claims. Here, however, Defendants are asking this Court to look to the future, predict that Plaintiffs will commence a separate action for any alleged overtime work performed in Texas, and preemptively require Plaintiffs to litigate those claims here. The Court will not do that. The remedy available to Defendants in such a future situation would be the same remedy that was available to the defendants in *Middleton*: defenses of issue or claim preclusion.

## V.    Conclusion

For the reasons stated above, the Court finds Defendants have not satisfied their burden of establishing the Court's subject-matter jurisdiction over this action. Therefore, the Court finds Plaintiffs' *Motion to Remand* shall be granted.

**IT IS THEREFORE ORDERED** that Plaintiffs' *Motion to Remand to District Court of Lea County, New Mexico by Reason of Lack of Jurisdiction*, (Doc. 20), is **GRANTED**, and this matter is **REMANDED** to the Fifth Judicial District Court, Lea County, State of New Mexico.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE

17